IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **RONNELL TOMLINSON**, <br> 608 Hidden Forest Dr. SE. <br> Lacey, WA 98513 <br><br> Plaintiff, <br><br> v. <br><br> **STATE OF OHIO**, <br><br> **OHIO CIVIL RIGHTS COMMISSION** <br><br> C/O <br> **DAVID YOST, ATTORNEY GENERAL** <br> 30 E. Broad St., 14th Floor <br> Columbus, Ohio 43215 <br><br> Defendant(s). | Case No. <br><br> Judge: <br><br> Magistrate Judge: <br><br> **JURY DEMAND HEREIN** |

## COMPLAINT

**I.     Preliminary Statement**

1.     This action seeks economic, compensatory, and punitive damages; declaratory, injunctive, and equitable relief; prejudgment and post-judgment interest; and attorneys' fees and costs for the violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, committed when Defendant discriminated against Plaintiff because of his disability by its adverse actions of failing, despite the absence of undue hardship, to continue to engage in an interactive dialogue and its refusal to approve Plaintiff's requested reasonable accommodation for his disability, and instead, seeking Plaintiff's involuntary disability separation, while at the same

1

time permitting non-disabled employees to work in the same manner that Plaintiff requested as a reasonable accommodation.

**II.      Jurisdiction and Venue**

2. This Complaint brings a discrimination claim under the ADA, 42 U.S.C. § 12112, pursuant to an Equal Employment Opportunity Commission ("EEOC") Notice of the Right to Sue issued June 16, 2025 and attached as Exhibit A, wherein Charging Party Ronnell Tomlinson filed Charge No. 532-2024-01490 against Respondent the Ohio Civil Rights Commission alleging disability discrimination in violation of the ADA.

3. The EEOC Notice of the Right to Sue for Charge No. 532-2024-01490 reads in pertinent part that, "[T]he EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge."

3. This Court has jurisdiction by virtue of 28 U.S.C. §§ 1331 (federal question); 1343 (civil rights), and 1367 (supplemental jurisdiction).

4. Declaratory, equitable, and injunctive relief is sought pursuant to 28 U.S.C. §§ 2201; 2202, and the ADA.

5. Compensatory and punitive damages may be awarded under the ADA.

6. Costs and attorneys' fees may be awarded pursuant to the ADA and Fed. R. Civ. P. 54.

7. Venue lies in this forum pursuant to 28 U.S.C. § 1391(b) and S.D. Civ. R. 82.1 because the events that gave rise to this Complaint took place in Franklin County, Ohio and Plaintiff was a resident of Franklin County.

### III. Parties

8. Plaintiff, Ronnell Tomlinson, is a 64-year-old African-American male who was employed by the Ohio Civil Rights Commission ("Defendant" or "OCRC") located at 30 East Broad Street in Columbus, Ohio 43215 for approximately 26 and 1/2 years, at all relevant times held the position of the OCRC Director of Housing Enforcement/Housing Coordinator, and was formerly a resident of Franklin County, Ohio.

9. Defendant State of Ohio created and operates the Ohio Civil Rights Commission ("OCRC") as a state agency, which is an employer under Title VII of the Civil Rights Act of 1964 as amended, with six regional offices located in Columbus, Cincinnati, Dayton, Toledo, Cleveland, and Akron with approximately 75 employees, and charged with the duty of receiving, investigating and making determinations on charges of disability, housing, public accommodation, racial, and other forms of unlawful discrimination. *See* O.R.C. Sec. 4112, *et. seq*.

### IV. Facts

10. Plaintiff is a 64-year-old African-American male who was employed by the Ohio Civil Rights Commission ("Defendant" or "Commission") located at 30 East Broad Street, Columbus, Ohio 43215 for approximately 26 and 1/2 years.

11. In 1997 while attending Capital University Law School, Plaintiff began his employment with the OCRC in the temporary position of Legal Intern, and was subsequently hired as a regular employee in 1998 in the position of Investigator Level I.

3

12. After several promotions, in 2000, Plaintiff was promoted to the position of Director of Housing Enforcement/Housing Coordinator with oversight for Ohio's statewide housing investigations. He simultaneously held the position of the Director of Mediation.

13. Plaintiff's duties for the Director of Housing Enforcement/Housing Coordinator's position included coordinating and working with the U.S. Department of Housing and Urban Development ("HUD"); overseeing complex housing and public accommodation discrimination cases filed under Ohio Revised Code 4112; serving as a subject matter expert on housing disability discrimination law for the Commission and agencies the Commission served; conducting fair housing training for HUD's National Fair Housing Training sessions, housing providers, the general public, and state and federal agencies regarding the statutory requirements of Ohio's housing and disability laws; mediation; and management and supervisory duties.

14. In July of 2013, Plaintiff had a serious health condition that affected his circulatory system requiring hospitalization and short-term monitoring of the condition through his primary care physician.

15. Plaintiff requested, and the former OCRC Executive Director granted, a reasonable accommodation under the ADA, which allowed him to continue to successfully perform the essential functions of his job.

16. In or around March of 2020, the Commission hired its current Executive Director, Defendant Angela Phelps-White.

17. Shortly after the new executive director was hired, the State of Ohio issued its Stay-at-Home Order as part of the strategy for addressing COVID-19. As a result, most Commission employees worked from home five days a week.

18. After the March 2020 Stay-at-Home Order, the working conditions and environment at the OCRC changed.

19. Although Plaintiff experienced many changes throughout his nearly 27-year career with Defendant, and change is to be expected with new management, a convergence of events made the amount of change atypical.

20. Defendant experienced an unusually high amount of turnover, with approximately 75% of the executive staff separating, a high turnover rate for investigators, and turnover among the Regional Directors, entrusted with management of the Defendant's Regional Offices.

21. In addition to the high turnover rate, staffing shortages and an influx of new employees with limited knowledge in conducting R.C. 4112 discrimination investigations, HB 352 was enacted and became effective in April of 2021.

22. HB 352 increased Defendant's workload, as it requires that all administrative remedies must be exhausted for R.C. 4112 employment, housing and public accommodation discrimination cases by first filing charges with the OCRC prior to filing suit.

23. The combined effect of COVID-19; unprecedented turnover resulting in vacancies and new untrained employees; and HB 352 took a toll on OCRC employees and morale, as evidenced by the high turnover rate.

24. Plaintiff's health had generally been good since the health problems he had experienced in 2013, and symptoms of his diagnoses were well controlled.

25. As conditions at the OCRC changed, however, Plaintiff increasingly experienced problems with sleeping, anxiety, stress, and depression.

26. Plaintiff's blood sugar levels increased from being within normal ranges, to an A1C of 10.1, which required immediate medication therapy.

27. Plaintiff's blood pressure ("BP") also markedly increased to such an extent that an increased dosage of his BP medication was required.

28. Plaintiff's physician warned that his increased blood sugar levels and elevated blood pressure put him at greater risk for stroke, cardiac events, and blood clots, particularly in light of him previously having a life-threatening pulmonary embolism and a deep vein thrombosis.

29. Because no other facet of Plaintiff's life had changed, his physician concluded there was a direct correlation between his worsening physical symptoms and his work environment.

30. On or around February 23, 2023, Plaintiff requested a reasonable accommodation under the ADA, based on the advice of his physician.

31. Plaintiff's reasonable accommodation request, provided by his physician, was that he needed to work from home full-time starting Monday, February 27, 2023, through March 31, 2023.

32. Plaintiff was already successfully working from home three days each week, so the reasonable accommodation request, which was granted, increased the number of days he worked from home each week by two additional days.

33. Although Plaintiff's health began to improve during the month when he was physically away from the office, his physician still had concerns.

34. Because Plaintiff wanted to work and continue his 26.5-year career with the OCRC, he subsequently submitted a "Medical Inquiry Form ADA Reasonable Accommodation" requesting a work from home ("WFH") arrangement for eight to nine months as a reasonable accommodation, which would have resulted in working from home approximately eight additional days per month.

6

35. At that time, most of Defendant's employees were still working from home at least three days each week.

36. The OCRC requested additional information and after a few emails back and forth with the ADA Coordinator, Denise Johnson, Plaintiff was asked to clarify the duration of the requested WFH arrangement.

37. Specifically, Plaintiff received an email on March 9, 2023 that read, "[T]here is also an inconsistency between the amount of time that you stated that you wanted to work remotely and what your medical provider states. Which is accurate, 30 days or one year? If thirty days, your request was already granted and there would be no need for further investigation."

38. On March 13, 2024, Plaintiff received an email that read, "Based on the information that you and your medical provider have submitted, as a part of the interactive process I am offering an effective alternative reasonable accommodation that would remove the stated workplace barrier, feeling unsafe performing your job in person at 30 E. Broad St. You have stated that there is nothing physical in the workplace that causes your blood pressure to elevate."

39. Plaintiff was advised that he needed to respond to questions asked in the email by March 20, 2023, but he was unclear about what "the workplace barrier" referenced meant, and could not adequately answer the "yes" or "no" questions of whether there were individuals in the workplace that created his stress and caused him to feel unsafe, because there were were multiple factors and circumstances that contributed to his medical condition.

40. Before Plaintiff had an opportunity to respond, he experienced a catastrophic fire at his residence that resulted in complete destruction of his home and the property inside, and the cat that he had for about twenty years died in the fire, which further increased his stress, BP and A1C.

41. Plaintiff suddenly had no place to live, no possessions, needed to find new housing, important documents were destroyed, and the City of Columbus required that certain paperwork regarding the fire be completed with short deadlines.

42. Plaintiff notified his supervisor and Executive Director Phelps-White about the fire, but when he was unable to respond to questions posed by the deadline, he was notified on April 4, 2023 that his request for an extension of his reasonable accommodation was denied.

43. At the time that Plaintiff's reasonable accommodation request was denied, most of Defendant's employees continued to work at home at least three days each week.

44. On April 28, 2023, Plaintiff received an email from OCRC General Counsel, Joseph McDonald ("General Counsel McDonald"), advising that he was handling an appeal of the denied reasonable accommodation request.

45. Although Plaintiff had notified the Defendant of his intent to appeal as a courtesy, he was not ready to formally appeal the decision at that time because of his health; he was not aware of any internal procedures regarding a deadline for appeal; and had not previously received anything to that effect from Defendant.

46. When Plaintiff was contacted by General Counsel McDonald on May 16, 2023 to discuss the appeal, Plaintiff advised that he was unable to participate in a meaningful discussion at that time, based on his physician's advice.

47. Defendant subsequently notified Plaintiff that his appeal was denied, and he remained on FMLA leave until it was exhausted.

48. At the time that Plaintiff's appeal was denied, through his separation date and beyond, most of Defendant's employees continued to work from home at least three days each week.

49. On November 16, 2023, Plaintiff was first advised that an involuntary disability separation hearing would be conducted within four business days, on November 21, 2023.

50. Plaintiff still wanted to return to working at the Commission, just as he had done for nearly 27 years, so he requested a voluntary disability separation which made him eligible for reinstatement for up to two years.

51. Plaintiff's voluntary disability separation was approved and effective on or around November 29, 2023.

52. As of the November 29, 2023 effective date of Plaintiff's voluntary disability separation and beyond, most of Defendant's employees continued to work from home at least three days each week.

53. The effect of denying Plaintiff's second reasonable accommodation request was devastating, as he had planned on continuing to work for Defendants until he could retire in several years with 30-years of service at age 66, effective July 1, 2027.

54. At that time, Plaintiff's monthly pension would have been $5,131.00, but because he needed to support his family, and suddenly had no job or benefits, especially medical coverage, he believed that he had no choice but to take an early retirement, which resulted in a monthly pension payment of only $3,153.00.

55. The series of events took a toll on Plaintiff's physical and emotional health.

56. Plaintiff already suffered from depression, anxiety, sleeplessness and the physical problems previously noted, and the inability to continue working at an agency where he had worked for almost 27 years further exacerbated those symptoms.

57. As a result of Defendant's willful violation of the ADA when it failed to reasonably accommodate Plaintiff from April of 2023 through the date of Plaintiff's voluntary disability

separation, even though it would not have caused an undue hardship and other non-disabled employees were working from home when Plaintiff's request was denied, it directly and proximately caused Plaintiff to suffer economic harm and emotional distress.

## V. Cause of Action

### A. Violation of the Americans with Disabilities Act

58. Plaintiff incorporates all of the foregoing allegations as if fully stated herein.

59. Defendant has willfully violated the Americans with Disabilities Act by failing to continue in the interactive dialogue process and denying Plaintiff's requested reasonable accommodations, and instead, seeking Plaintiff's involuntary disability separation, while at the same time permitting non-disabled employees to work in the same manner that Plaintiff requested as a reasonable accommodation.

**Prayer for Relief**

WHEREFORE, Plaintiff is entitled to and prays for the following relief:

A. a declaration that Defendant has violated the Americans with Disabilities Act;

B. economic and compensatory damages in an amount exceeding $75,000.00, and punitive damages;

C. pre-judgment and post-judgment interest;

D. costs and attorneys' fees; and,

E. such other relief as the Court deems fair and equitable.

Respectfully submitted

By: */s/ Helen M. Robinson*
Helen M. Robinson (0097070)

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

(*hrobinson@marshallforman.com*)
John S. Marshall (0015160)
(*jmarshall@marshallforman.com*)
Edward R. Forman (0076651)
(*eforman@marshallforman.com*)
Samuel M. Schlein (0092194)
(*sschlein@marshallforman.com*)
Madeline J. Rettig (0098816)
(*mrettig@marshallforman.com*)
MARSHALL AND FORMAN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

## **JURY DEMAND**

Plaintiff hereby demands a jury of eight (8) persons.

By: */s/ Helen M. Robinson*
Helen M. Robinson (0097070)

11