**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RONNELL TOMLINSON,**

**Plaintiff,**

**v.**

**Case Number 2:25-cv-1057**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Chelsey M. Vascura**

**STATE OF OHIO, OHIO CIVIL RIGHTS COMMISSION,**

**Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Ohio Civil Rights Commission's Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 9.) Plaintiff Ronnell Tomlinson filed a response in opposition (ECF No. 14), and the Ohio Civil Rights Commission filed a reply in support (ECF No. 15). For the reasons stated below, the Motion to Dismiss is **GRANTED**. (ECF No. 9.)

## BACKGROUND

This case arises out of Mr. Tomlinson's former employment with the Ohio Civil Rights Commission ("OCRC"). (Am. Compl., ECF No. 7, ¶ 8.) Mr. Tomlinson brings a claim against his former employer for violating Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, alleging disability discrimination for failure to accommodate. (*Id.* ¶ 1.)

Mr. Tomlinson worked at OCRC for over 26 years, most recently serving as the Director of Housing Enforcement/Housing Coordinator. (*Id.* ¶ 8.) Mr. Tomlinson began to experience health problems including an increase in blood pressure and blood sugar levels as well as problems with sleeping, anxiety, stress, and depression. (*Id.* ¶¶ 25–27.) Mr. Tomlinson's

physician attributed his worsening physical symptoms to changes in his work environment, specifically an increase in his workload. (*Id.* ¶¶ 22, 29.)

In February 2023, Mr. Tomlinson requested to work from home full-time from February 27 through March 31 based on the advice of his physician. (*Id.* ¶¶ 30–31.) OCRC granted Mr. Tomlinson's request. (*Id.* ¶ 32.) Mr. Tomlinson's health began to improve, but his physician still had concerns, so Mr. Tomlinson submitted a request to extend his current work-from-home arrangement by a period of eight to nine months. (*Id.* ¶¶ 33–34.) Mr. Tomlinson alleges that most of OCRC's employees worked from home at least three days a week around that time. (*Id.* ¶ 35.)

In March 2023, Mr. Tomlinson corresponded via email with OCRC's disability coordinator, Denise Johnson, about his work-from-home request. (*Id.* ¶ 36.) On March 13, OCRC offered an alternative accommodation and asked Mr. Tomlinson to respond to a series of questions by March 20. (*Id.* ¶¶ 38–39.) Mr. Tomlinson did not respond to the questions by the deadline and, on April 4, was notified that his work-from-home request had been denied. (*Id.* ¶ 42.) Mr. Tomlinson informed OCRC that he intended to appeal the denial. (*Id.* ¶ 45.) On April 28, OCRC's General Counsel, Joseph McDonald, emailed Mr. Tomlinson informing him that he was handling the appeal. (*Id.* ¶ 44.) Mr. McDonald contacted Mr. Tomlinson a second time on May 16 to discuss the appeal, but Mr. Tomlinson advised he was unable to participate in a meaningful discussion at that time because of his health. (*Id.* ¶¶ 45–46.) Mr. Tomlinson was later notified that his appeal was denied. (*Id.* ¶ 47.) At some point around this time, Mr. Tomlinson went on Family and Medical Leave Act (FMLA) leave. (*Id.*; *see* ECF No. 14, PageID 111.)

On November 16, 2023, Mr. Tomlinson was advised that an involuntary disability separation hearing would be conducted in four days. (Am. Compl., ¶ 49.) To remain eligible for

reinstatement, Mr. Tomlinson requested a voluntary disability separation instead, which was approved. (*Id.* ¶¶ 50–51.) Mr. Tomlinson subsequently took an early retirement. (*Id.* ¶ 54.)

Mr. Tomlinson initiated this action on September 15, 2025, alleging violations of the Americans with Disabilities Act ("ADA"). (ECF No. 1.) OCRC moved to dismiss the Complaint on the basis that Mr. Tomlinson's ADA claims were barred by the Eleventh Amendment. (ECF No. 3.) Mr. Tomlinson then filed his First Amended Complaint, which contains the same facts but substitutes his ADA claim for a claim under Section 504 of the Rehabilitation Act. (ECF No. 7.) The Court denied OCRC's motion to dismiss the original Complaint as moot. (ECF No. 6.) OCRC subsequently filed the instant Motion to Dismiss. (ECF No. 9.) Mr. Tomlinson filed a response in opposition (ECF No. 14), and OCRC filed a reply in support (ECF No. 15).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must satisfy the pleading requirements set forth in Federal Rule of Civil Procedure 8(a), which requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (clarifying the plausibility standard from *Twombly*, 550 U.S. at 556). Furthermore, "[a]lthough for the purposes of a motion to dismiss [a court] must take all of the

factual allegations in the complaint as true, '[the court is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

**ANALYSIS**

OCRC moves to dismiss the First Amended Complaint (ECF No. 7) under Federal Rule of Civil Procedure 12(b)(6) on three grounds: (1) Mr. Tomlinson's failure-to-accommodate claim is time-barred; (2) even if timely, Mr. Tomlinson caused a breakdown in the interactive process, which independently precludes his claim; and (3) to the extent that Mr. Tomlinson intends to allege retaliation, the Rehabilitation Act provides no private cause of action for such claim. (Mot., ECF No. 9, PageID 71.) Mr. Tomlinson's response clarifies that his First Amended Complaint does not allege a retaliation claim. (Opp., ECF No. 14, PageID 119.) As such, the Court need not consider OCRC's retaliation argument. And because the Court finds below that Mr. Tomlinson's failure-to-accommodate claim is time-barred, it also does not reach OCRC's breakdown-in-the-interactive-process argument.

**I. Failure to Accommodate Under the Rehabilitation Act**

Section 504 of the Rehabilitation Act of 1973 prohibits employers that receive federal funding from discriminating against a qualified employee because of the employee's disability. 29 U.S.C. § 794(a). To set forth a *prima facie* case for failure to accommodate under the Rehabilitation Act, the plaintiff must show that: (1) he has a disability; (2) he is qualified for the position; (3) the agency was aware of his disability; (4) he needed an accommodation; and (5) the agency failed to provide the necessary accommodation. *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004).

### A. Statute of Limitations

OCRC moves to dismiss Mr. Tomlinson's failure-to-accommodate claim as time-barred, asserting that the applicable two-year statute of limitations began to run on April 4, 2023, when Mr. Tomlinson's accommodation request was denied. (Mot., PageID 77–78); *McCormick v. Miami Univ.*, 693 F.3d 654, 662 (6th Cir. 2012) (holding that the statute of limitations for Rehabilitation Act claims brought in Ohio is two years). Mr. Tomlinson does not dispute that his claim is subject to a two-year statute of limitations but disagrees that the period began upon the accommodation's denial. (Opp., PageID 114.)

As such, the critical question is when Mr. Tomlinson's claim accrued. The statute of limitations for a Rehabilitation Act claim begins "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281, 292 (6th Cir. 2019) (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). In the failure-to-accommodate context, a plaintiff knows of the injury giving rise to his claim when he learns that his accommodation is denied. *See Wilson v. Ohio Dep't of Mental Health & Addiction Servs.*, 704 F. Supp. 3d 820, 834–35 (S.D. Ohio 2023) (Graham, J.), *aff'd*, No. 23-3994, 2024 WL 3814047, at *4–5 (6th Cir. Aug. 14, 2024) (finding that the plaintiff was aware of her injury when her department denied her accommodation request). Furthermore, the Sixth Circuit has declined to toll limitation periods while an employment decision is under internal review. *Lyons v. Metro. Gov't of Nashville & Davidson Cnty.*, 416 F. App'x 483, 491 (6th Cir. 2011) (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)); *see also Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 538 (6th Cir. 2010) (applying the same tolling standards to Rehabilitation Act claims as to 42 U.S.C. § 1983 claims).

In this case, Mr. Tomlinson was notified on April 4, 2023, that his accommodation request had been denied. (Am. Compl., ¶ 42.) At that point, Mr. Tomlinson knew of the alleged injury giving rise to his claim. *Wilson*, 2024 WL 3814047, at *4–5. Although Mr. Tomlinson pursued an internal appeal, that appeal does not stop the two-year clock from running. *Ricks*, 449 U.S. at 261 ("[T]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations period."). Mr. Tomlinson argues that the November 16, 2023 notification scheduling an involuntary separation hearing was "[i]n effect . . . another denial" of his accommodation request. (Opp., PageID 115.) But Mr. Tomlinson's claim is not premised on OCRC scheduling an involuntary separation hearing. Instead, the injury giving rise to his claim is OCRC's denial of his accommodation request, which Mr. Tomlinson first became aware of on April 4, 2023. Accordingly, Mr. Tomlinson had until April 4, 2025, to file a timely Rehabilitation Act claim. Since Mr. Tomlinson's original Complaint (ECF No. 1) was filed on September 15, 2025,[1] more than five months after the limitations period expired, his failure-to-accommodate claim is time-barred.

**B. The Continuing Violation Doctrine**

Mr. Tomlinson attempts to avoid this time bar by invoking the continuing-violation doctrine, arguing that OCRC's failure to accommodate him was a continuing violation that extended beyond April 4, 2023. (Opp., PageID 115.) This doctrine permits courts to consider "all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (quoting *Alexander v. Loc. 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 408

[1] The Court assumes that Mr. Tomlinson's First Amended Complaint, which asserts the Rehabilitation Act claim, relates back to this date. *See* Fed. R. Civ. P. 15(c)(1).

(6th Cir. 1999)). It applies, however, only "when prior discriminatory activity '*continues into the present*, as opposed to prior discriminatory activity whose effects continue into the present.'" *Wilson*, 2024 WL 3814047, at *4 (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003)). Further, it does not authorize recovery for discrete acts of discrimination—such as termination, failure to promote, denial of transfer, or refusal to hire—that occurred outside of the filing period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–115 (2002).

Mr. Tomlinson cites *Bell v. Ohio State University*, 351 F.3d 240 (6th Cir. 2003), to support his argument that the continuing violation doctrine should apply. (Opp., PageID 115.) But *Bell* explains that the doctrine applies where the plaintiff can show (1) prior discriminatory activity that continues into the present or (2) a long-standing policy of discrimination—not in cases involving discrete acts of discrimination that occur outside the statutory period. 351 F.3d at 247; *see also O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*, 833 F. App'x 605, 613 (6th Cir. 2020) ("The continuing-violation doctrine only applies in hostile-work-environment cases, as their very nature involves repeated conduct where the claim is based on the cumulative effect of all such acts.") (citation modified). In *Bell*, the Sixth Circuit held that the continuing violation doctrine did not apply because the plaintiff had alleged "discrete acts of which [she] was immediately aware when they occurred," rather than a "longstanding policy of discrimination." *Bell*, 351 F.3d at 247–48; Likewise, the denial of Mr. Tomlinson's accommodation request was a single, discrete act of which he was aware on April 4, 2023. Because Mr. Tomlinson has alleged a discrete act rather than ongoing discrimination, the continuing violation doctrine does not affect the limitations period, and his failure-to-accommodate claim remains untimely. *Id.*; *see also Morgan*, 536 U.S. at 114–115; *O'Donnell*, 833 F. App'x at 613; Wilson, 2024 WL 3814047, at *4–5.

## CONCLUSION

For the reasons above, (ECF No. 9) Defendant Ohio Civil Rights Commission's Motion to Dismiss is **GRANTED**. Plaintiff Ronnell Tomlinson's First Amended Complaint is **DISMISSED**.

The Clerk is **DIRECTED** to enter judgment and terminate this case on the docket.

**IT IS SO ORDERED.**

**8/14/2026**
**DATE**

**s/Edmund A. Sargus, Jr.**
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**